CLAY, Circuit Judge,
dissenting.
I agree with the majority that the district court had subject matter jurisdiction over this case pursuant to section 301 of the Labor Management Relations Act, 29 *292 U.S.C. § 185(a) (“LMRA § 301”), and that dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure was improper. However, I disagree with the majority’s conclusion that Teamsters Local Union 480 (“the Union”) must utilize the grievance procedure set forth in the parties’ collective bargaining agreement (“CBA”) before seeking judicial relief with respect to their claim that United Parcel Service (“UPS”) breached the parties’ settlement agreement. The settlement agreement that the Union seeks to enforce against UPS memorialized a final, complete settlement of several individual grievances. This particular settlement agreement is capable of being interpreted and enforced without reference to the CBA or other documents. Thus, the Union’s complaint that UPS breached the settlement agreement does not concern “interpretation, application, or observance” of the CBA, and therefore does not fall within the grievance procedure provision contained in the CBA. Because the parties did not agree to subject this dispute to the grievance procedure in the CBA, I respectfully dissent.
Both parties agree that this Court has authority, generally, to enforce a settlement agreement between parties to a CBA. See Jones v. Gen. Motors Corp. and United Auto Workers, Local 1112, 939 F.2d 380 (6th Cir.1991); Davis v. Bell Atlantic-West Virginia, Inc., 110 F.3d 245 (4th Cir.1997). The issue in this case is whether, prior to seeking relief in federal court, the Union must submit its complaint to the grievance process set forth in the CBA. The Union contends that it may seek immediate relief in federal court for UPS’ breach, and seeks a declaratory judgment to enforce the agreement against UPS. In response, UPS argues that the Union’s complaint that UPS breached the settlement agreement falls within the grievance procedure provision in the CBA, and that the Union has not exhausted its remedies under the CBA, including an arbitration requirement. The majority, like the district court below, holds that the Union must “exhaust the internal grievance process under the CBA,” but does not offer any guidance as to what this entails. Presumably, the majority would require the Union to begin at step one of the grievance process, which provides, in pertinent part, “[t]he employee shall report [any grievance, complaint, or dispute] to the employee’s shop steward in writing within five (5) working days” and “[t]he steward shall attempt to adjust the matter with the supervisor within forty-eight (48) hours.” In addition to being impractical, this outcome is legally incorrect.
It is true that “[wjhere [a] contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.” AT & T Techs., Inc. v. Commc’ns Workers of Am., 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (internal quotation marks and citation omitted); see also United Steelworks of America v. Cooper Tire & Rubber Co., 474 F.3d 271, 277-278 (6th Cir.2007). Nonetheless, “arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.” AT & T Techs., 475 U.S. at 648, 106 S.Ct. 1415.
The CBA provides, in relevant part: “[any] grievance that [is not subject to the National Grievance Procedure] shall be resolved pursuant to the provisions relating to the local, state and area grievance procedures set forth in the applicable Supplement[ ]....” A grievance is defined as “any controversy, complaint, misunder *293 standing or dispute arising as to interpretation, application or observance of the provisions of this Agreement.” (emphasis added).
As a threshold matter, I strongly disagree with the majority’s statement that “we need not resolve the question of [whether the dispute over UPS’ alleged breach of the settlement agreement is one ‘arising as to interpretation, application or observance’ of the CBA] because both parties agree that it does.” Majority at 287. The Union’s passing statement that “UPS’s breach of the Settlement Agreement constitutes a violation of the arbitration provisions of the CBA” is not a concession that the dispute concerns “interpretation, application or observance of [the CBA].” Construing this statement as a concession is improper, especially where “the Settlement Agreement was [not] entered into through the formal grievance process [set forth in the CBA].” Majority at 290. Indeed, both parties concede in their arguments on appeal that the settlement agreement, which was freely negotiated and entered into between them, was not arrived at through the mechanism of the CBA grievance process.
The dispute as to whether UPS breached the settlement agreement does not constitute a dispute “as to interpretation, application, or observance” of the CBA. This particular settlement agreement by its terms was a final, complete agreement that concluded and superseded the parties’ prior dealings under the CBA. It is a freestanding document that does not refer to the CBA or any provision therein. And, according to the majority, it was not begotten by the CBA. See Majority at 289-90. The dispute as to whether UPS breached the settlement agreement can be resolved from the four corners of the settlement agreement without reference to the CBA, and concerns only the language of the settlement agreement, and not the CBA. It involves the interpretation and application of the settlement agreement, and not the CBA. Quite simply, the grievance provision in the CBA is “not susceptible of an interpretation that covers the asserted dispute.” United Steelworkers, 474 F.3d at 278.
In reaching the opposite conclusion, the majority summarily affirms the reasoning of the district court that “a dispute concerning the arbitrability of a disagreement about a breach of a settlement agreement can amount to an interpretation or application of the CBA.” Majority at n. 3. But this reasoning is circular, and constitutes a misstatement of the fundamental dispute in this case. There are two disputed issues before this Court. The fundamental dispute is whether UPS breached the settlement agreement. This is the dispute that was set forth in the Complaint that the Union filed in district court. The second dispute is whether the fundamental dispute is subject to the grievance procedure outlined in the CBA. This is the affirmative defense raised by UPS in response to the Union’s Complaint. The district court’s analysis conflates these two disputed issues. While the second dispute “concern[s] the arbitrability of [the fundamental dispute and] can amount to an interpretation or application of the CBA,” the fundamental dispute concerns the proper interpretation of the settlement agreement, and does not relate to the CBA at all. The fundamental dispute is not a dispute “as to interpretation or application of’ the CBA, and UPS’ affirmative defense cannot bring the Union’s claim under the purview of the CBA’s grievance procedure provision. The district court’s reasoning, which asserts otherwise, is disingenuous and misleading.
*294 UPS’ alternative theory is similarly flawed. UPS argues that the fundamental dispute is subject to the grievance procedure prescribed in the CBA because “any decision by the Court here [as to whether UPS breached the settlement agreement] would have to analyze and determine how the parties define, by contract and/or practice, ‘extra/coverage work opportunities,’ ‘out of classification work,’ and ‘out of classification workers.’ ” Appellee Br. at 16. Therefore, UPS argues, “any disagreement over whether the June 2010 Settlement Agreement was violated invariably requires the interpretation and application of the CBA.” Appellee Br. at 16. But not every dispute that marginally involves the interpretation or application of the CBA is a substantive dispute as to the interpretation or application of the CBA. Indeed, UPS has not alleged that the parties disagree on the meaning of “extra/eoverage work opportunities,” “out of classification work,” or “out of classification workers.” The fact that the court might have to look to the CBA, along with other evidence, simply as background or context for understanding certain language in the settlement agreement does not convert a dispute over the settlement agreement into a dispute over the interpretation or application of the CBA. This is all the more true where, as in this case, the dispute can be resolved entirely, or almost entirely, by reference to the language of the settlement agreement alone. In other words, this dispute as to the meaning and application of the settlement agreement did not “arise as to interpretation, application, or observance of’ any of the provisions of the CBA, and the dispute is not subject to the grievance procedure provision in the CBA.
Though the majority opinion suggests otherwise, our decision in Jones v. General Motors Corporation does not preclude this holding, and has little relevance to the present case. 939 F.2d 380. Whereas the issue in the present case is whether the parties agreed to submit a dispute concerning the settlement agreement to the grievance procedure, the issue in Jones was whether an employee’s state law claim against his employer for breach of a settlement agreement was preempted by LMRA § 301. Jones did not involve a grievance provision at all, and is entirely irrelevant to the instant case, in which preemption is not a disputed issue.[1] Jones stands for the well-settled proposition that an employee’s claim against his employer for breach of a settlement agreement should be brought in federal court under LMRA § 301; it says nothing about whether or when a dispute over a settlement agreement might “arise as to interpretation, application, or observance of’ a CBA.[2] Jones ’ holding that a *295 state law claim for breach of a settlement agreement “require[s] an ‘interpretation of the terms’ of a CBA triggering § 301 preemption” does not contradict a holding that the dispute in the instant case falls outside the scope of the parties’ arbitration provision. 939 F.2d at 383. Even assuming that the dispute in the present case would “require an interpretation of the terms of [the] CBA,” the majority still cannot show that the dispute arose as to the interpretation of the CBA. Jones is entirely inapplicable to the central issue in the instant case.
In addition to the fact that Jones dealt with a wholly different legal question, this case and the Jones case are factually distinguishable in a critical way. The Court in Jones observed that the settlement agreement at issue “was arrived at by virtue of a grievance process established by a collective bargaining agreement.” 939 F.2d at 382. In the present case, the settlement agreement was not “an outcome of the grievance process” nor a “decision reached at any step of the grievance procedure [established by the CBA].” Majority at 289.
Because the dispute before this Court— whether UPS breached the settlement agreement — is not a dispute “as to the interpretation, application, or observance of [the CBA],” the dispute is not subject to the grievance procedure provision in the CBA. To hold otherwise would subvert the parties’ agreement to resolve their differences pursuant to the settlement agreement into which the parties entered in lieu of the CBA grievance process. Accordingly, the Union was not required to submit its complaint to the grievance procedure prior to seeking recourse in a court of law. Because the settlement agreement is enforceable in federal court, I would reverse the order of the district court and remand the case for proceedings consistent with this opinion.

. As stated above, the majority is correct that this case was properly brought under LMRA § 301, and a state law breach of contract claim would be preempted for many of the reasons articulated in Jones.

. The majority opinion takes certain language from Jones out of context. The Jones opinion states, in relevant part:
We must ... decide if Jones's breach of contract suit against GM in reality is a claim under § 301 of the LMRA, and is therefore pre-empted.... Pre-emption occurs when a decision on the state claim "is inextricably intertwined with consideration of the terms of the labor contract,” Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213, 105 S.Ct 1904, 85 L.Ed.2d 206 (1985), and when application of state law to a dispute "requires the interpretation of a collective-bargaining agreement.” Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 407, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).... We are faced with a state law claim for breach of a settlement agreement. This agreement was arrived at by virtue of a grievance process established by a collective bargaining agreement, signed only by the parties engaged in collective bargaining, and promised reinstatement to a job whose terms and conditions are created by and subject to a collective bargaining agree *295 ment. The resolution of this claim will not involve the direct interpretation of a precise term of the CBA, but it will require a court to address relationships that have been created through the collective bargaining process and to mediate a dispute founded upon rights created by a CBA. Does this process require an "interpretation of the terms” of a CBA triggering § 301 pre-emption? The district court answered this question in the affirmative, and we agree.
Jones v. Gen. Motors Corp., 939 F.2d 380, 382-83 (6th Cir. 1991).